UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
JAMES L. LAMAR,

                    *Plaintiff,*

   -against-

D. DANIELS CONTRACTING, LTD. and
DAVID E. DANIELS, *individually*,

                  *Defendants.*
--------------------------------------------------------------------X

**Docket No.:**


**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff James Lamar, as and for his Complaint, respectfully alleges, all upon information and belief, as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1331, in that certain of the Plaintiff's claims arise under the laws of the United States, namely Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §1981 ("§1981"), and supplemental jurisdiction over the remainder of Plaintiff's claims under §296(1)(a) of the New York State Executive Law.

2.     Venue is proper under 28 U.S.C §1391(b) because the events underlying this action occurred within the Eastern District of New York and because Defendants do business within the District.

## IDENTITY OF THE PARTIES

3.     At all relevant times mentioned herein, Plaintiff James Lamar ("Lamar"), who is African American, was employed by Defendants D. Daniels Contracting Ltd. and/or David E. Daniels until he was unlawfully terminated on November 26, 2019, days after he complained about race discrimination.

4.     At all relevant times mentioned herein, Defendant D. Daniels Contracting Ltd. is a corporation located at 2 Gates Avenue, Inwood, New York 11096.

5.     At all relevant times, Defendant David E. Daniels is the owner of Defendant D. Daniels Contracting Ltd., and both Defendants are collectively referred to herein as "D. Daniels," unless otherwise indicated.

6.     D. Daniels is a sanitation and garbage collection company that operates in the New York City metropolitan area.

## PROCEDURAL HISTORY

7.     On May 8, 2020, Lamar filed a complaint with the New York State Division of Human Rights regarding the discrimination he endured during his employment with Defendants.

8.     On December 16, 2020, the Division of Human Rights issued a "Determination After Investigation" stating, "After investigation, the Division has determined that it has jurisdiction in this matter and that PROBABLE CAUSE exists to believe that the Respondents have engaged in or are engaging in the unlawful discriminatory practice complained of."

9.     On August 19, 2021, the Division of Human Rights issued a Notice and Final Order dismissing the case for administrative convenience at Lamar's Request, so that Lamar could file the within action.

## BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

10.     Lamar commenced his employment with D. Daniels on or about November 6, 2019, working as a Driver and driving D. Daniels' sanitation vehicles.

11.     At all relevant times, Lamar was qualified for his position, based on his prior experience and the fact that he has a Class A license.

2

12.     When Lamar was interviewed by David E. Daniels ("Daniels"), the owner of the company, Daniels had said to Lamar that there was plenty of work for him to do and that he was looking for a driver that would show up on time and be willing to work 40 hours per week.

13.     Lamar responded that he was happy to work as many hours as the company could assign to him, and Daniels told Lamar that as long as Lamar was willing to work, Daniels would have work for him.

14.     Lamar was hired to work between the hours of 3:00 am and 3:00 pm.

15.     Lamar truly enjoyed his work and was given the nickname "Happy" because he was always smiling.

16.     On Friday, November 15, 2019, at around 6:00 am, Lamar texted with the Maintenance Manager, named "Joe" (last name unknown), about repairs to a vehicle Lamar was driving.

17.     About 15 minutes later, Lamar received a text from Joe stating, **"Happy go lucky Niger is back on the road,"** which was Joe clearly referring to Lamar as a "nigger."

18.     Lamar could not believe that Joe would be so blatant and he asked Joe if he was really calling him that, to which Joe responded, "Just a joke bro."

19.     Lamar had heard from an African American co-worker at D. Daniels Contracting that Joe was "racist," but this was the first time Lamar saw this discriminatory bias for himself.

20.     Lamar, who was understandably upset, texted a screenshot of Joe's racist texts to Daniels, the owner.

21.     Daniels responded, "That's not good I don't like that" and said he would address it with Joe.

22.     Lamar's last day working for D. Daniels Contracting was just 10 days later, on November 26, 2019.

23.     Lamar kept reaching out to Daniels to ask about when he could work, but Daniels did not respond to Lamar.

24.     Ultimately, Daniels responded on or about December 4, 2019, that he did not have work for Lamar, but this excuse was clearly a pretext because he had just told Lamar a few weeks earlier when he hired him that the company had plenty of work and was looking for drivers that could do all the work that was required.

25.     The real reason Lamar stopped working for D. Daniels Contracting was because of retaliation for his complaint about race discrimination.

26.     As a result of Defendants' discriminatory conduct, Lamar has suffered the adverse effects of race discrimination and retaliation, which includes damages to the quality of his life, his self-esteem, self-respect and financial and emotional well-being because he was subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Lamar into the future.

27.     Here, Defendants' conduct towards Lamar shows that they acted with willful or wanton negligence, malice, recklessness, or a conscious disregard of Lamar's rights, or that their unlawful actions against Lamar were so reckless as to amount to a disregard of Lamar's rights, so that in addition to all the damages inflicted upon Lamar and in addition to all the measure of relief to which he may properly be entitled herein, Defendants should also be required to pay punitive damages as punishment for their discriminatory conduct in order to deter them and others similarly situated from engaging in such conduct in the future.

**AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF LAMAR
OF AGAINST DEFENDANTS FOR RACE DISCRIMINATION IN
<u>VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. §1981</u>**

28.   Lamar repeats, re-alleges and incorporates in full paragraphs 1 through 27 of this Complaint as though fully set forth at length herein.

29.   By the acts and practices set forth herein, Defendants discriminated against Lamar in the terms and conditions of his employment on the basis of his race in violation of §1981.

30.   Defendants knew that their actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Lamar's statutorily protected rights.

31.   The aforementioned acts of Defendants constitute unlawful discrimination on the basis of race against Lamar in violation of §1981, which provides, *inter alia*, that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

32.   As a direct and proximate result of Defendants' violation of §1981, Defendants is liable to Lamar for damages, in an amount to be determined at trial, as well as reasonable attorney's fees, pre-judgment interest and costs.

33.   Here, the acts of Defendants were so egregious and were done with such bad-faith and/or reckless indifference for Lamar's protected rights under §1981, that, in addition to all the damages inflicted upon Lamar and in addition to all the measures of relief to which Lamar may properly be entitled herein, Defendants should also be required to pay punitive damages as punishment for their discriminatory conduct, in order to deter Defendants and others similarly situated from engaging in such conduct in the future.

5

34.     Lamar, therefore, seeks compensatory damages in this First Cause of Action, including, among other things, for loss of earnings and loss of earning capacity and for the emotional harm inflicted upon him, in an award to be determined at a trial of this matter, as well as punitive damages, reasonable attorney's fees, the costs of this action and pre-judgment interest.

## AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF LAMAR OF AGAINST DEFENDANTS FOR RACE DISCRIMINATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

35.     Lamar repeats, re-alleges and incorporates in full paragraphs 1 through 34 of this Complaint as though fully set forth at length herein.

36.     At the time that Lamar was subjected to the discriminatory conduct described herein, he was in a protected class under the New York State Human Rights Law because of his race, which is African American.

37.     Throughout the time of his employment with Defendants, Lamar was fully qualified for his position and was in a position to continue working in that capacity.

38.     Defendants treated Lamar less well because of his race, which culminated in his unlawful termination on November 26, 2019.

39.     The circumstances surrounding Defendants' conduct towards Lamar, including texting Lamar, **"Happy go lucky Niger is back on the road,"** which Daniels then ratified and condoned, create a very real inference that the actual basis for Defendants' conduct against Lamar was his race.

40.     The aforementioned acts of Defendants constitute unlawful race discrimination against Lamar in violation of Chapter 18, Article 15 of the New York State Executive Law §296(1)(a) ("the New York State Human Rights Law"), which provides, inter alia, that:

It shall be an unlawful discriminatory practice: (a) For an employer . . . because of an individual's . . . race . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

41.    As a direct and proximate result of Defendants' violation of the New York State Human Rights Law §296(1)(a), Lamar was adversely affected in his employment, and did and continues to suffer in his life's normal pursuits, and he believes that the injuries inflicted upon him as a result of Defendants' discriminatory conduct did and will continue to have a detrimental effect upon the quality of his life and career, and will prevent him from functioning as he did prior to the conduct complained of herein, all of which Lamar alleges to be in the amount of Two Million Dollars ($2,000,000).

42.    Here, Defendants' conduct toward Lamar shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Lamar's rights under the New York State Human Rights Law, or that their unlawful actions against Lamar were so reckless as to amount to a disregard of Lamar's rights, so that in addition to the actual and prospective financial loss suffered by Lamar, Defendants should also be required to pay punitive damages as punishment for their reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Defendants and others similarly situated from such conduct in the future.

43.    Lamar, therefore, seeks compensatory damages on this Second Cause of Action, including, among other things, the emotional harm inflicted upon him in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

**AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF LAMAR
AGAINST DEFENDANTS FOR RETALIATION IN VIOLATION
OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. §1981**

44.     Lamar repeats, realleges and incorporates in full paragraphs 1 through 43 of this Complaint as though fully set forth at length herein.

45.     By the acts and practices set forth herein, Defendants retaliated against Lamar for his opposition to unlawful discrimination under §1981.

46.     Defendants acted with malice and/or reckless indifference to Lamar's statutorily protected rights.

47.     As a proximate result of Lamar engaging in protected activities under §1981, Lamar suffered material adverse employment action, which included, among other things, ultimately being terminated to punish him for protesting the humiliating, insulting and discriminatory conduct he was forced to endure, all of which was causally connected to his complaints of discrimination.

48.     As a direct and proximate result of Defendants' violation of §1981, Defendants are liable to Lamar for damages in an amount to be determined at trial, as well as reasonable attorney's fees, pre-judgment interest and costs.

49.     Here, the acts of Defendants were so egregious and were done with such bad-faith and/or reckless indifference for Lamar's protected rights under §1981, that, in addition to all the damages inflicted upon Lamar and in addition to all the measures of relief to which he may properly be entitled herein, Defendants should also be required to pay punitive damages as punishment for their discriminatory conduct, in order to deter Defendants and others similarly situated from engaging in such conduct in the future.

50.     Lamar, therefore, seeks compensatory damages in this Third Cause of Action, including, among other things, for loss of earnings and loss of earning capacity and for the

emotional harm inflicted upon him, in an award to be determined at a trial of this matter, as well as punitive damages, reasonable attorney's fees, the costs of this action and pre-judgment interest, in this Cause of Action.

### AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF LAMAR OF AGAINST DEFENDANTS FOR RETALIATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

51.     Lamar repeats, re-alleges and incorporates in full paragraphs 1 through 50 of this Complaint as though fully set forth at length herein.

52.     Each time that Lamar protested Defendants' discriminatory conduct, he was engaged in a protected activity under the New York State Human Rights Law of which Defendants were aware.

53.     As a proximate result of Lamar engaging in a protected activity, Lamar suffered adverse employment action, which included, among other things, having his hours reduced and ultimately being terminated on November 26, 2019, all of which was causally connected to his complaint of race discrimination.

54.     Defendants' unlawful conduct has had a devastating impact on Lamar's employment, his emotional well-being, the quality of his life and his life's normal pursuits, which injuries Lamar believes will continue to cause him significant damage.

55.     The aforementioned acts of Defendants constitute unlawful discriminatory retaliation against Lamar in violation of the New York Human Rights Law §296(7), which provides, inter alia, that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

9

56.     As a direct and proximate result of Defendants' violation of the New York State Human Rights Law §296(7), Lamar was adversely affected in his employment, and did and continues to suffer in his life's normal pursuits, and he believes that the injuries inflicted upon him as a result of Defendants' retaliatory conduct did and will continue to have a devastating effect upon the quality of his life and career, and will prevent him from functioning as he did prior to the conduct complained of herein, all of which Lamar alleges to be in the amount of Two Million Dollars ($2,000,000), as well as reasonable attorney's fees pursuant to §297(10), and pre-judgment interest and costs.

57.     Here, Defendants' conduct towards Lamar shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Lamar's rights under the New York State Human Rights Law, or that their unlawful actions against Lamar were so reckless as to amount to a disregard of Lamar's rights, so that in addition to all the damages inflicted upon Lamar and in addition to all the measure of relief to which Lamar may properly be entitled herein, Defendants should also be required to pay punitive damages pursuant to §297(9) as punishment for their reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Defendants and others similarly situated from such conduct in the future.

58.     Lamar, therefore, seeks judgment against Defendants on this Fourth Cause of Action, for, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees pursuant to §297(10), making a total claim of Five Million Dollars ($5,000,000).

**AS AND FOR A FIFTH CAUSE OF ACTION, IN THE ALTERNATIVE, AGAINST DANIELS INDIVIDUALLY FOR AIDING AND ABETTING DISCRIMINATION AND RETALIATION IN VIOLATION OF §296(6) OF THE NEW YORK STATE HUMAN RIGHTS**

59.    Lamar repeats, realleges and incorporates in full paragraphs 1 through 58 of this Complaint as though fully set forth at length herein.

60.    Should Daniels be determined to not be individually liable under the New York State Human Rights Law for any reason, then Daniels should be held personally liable for aiding, abetting and compelling D. Daniel's discrimination against Lamar.

61.    As more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof, Daniels aided, abetted and compelled D. Daniel's discrimination and retaliation against Lamar, so that, should Daniels be deemed to have not been Lamar's employer, Daniels should be held personally liable for unlawful aiding and abetting against Lamar in violation of §296(6) of the New York State Human Rights Law, which states, *inter alia*:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

62.    Daniels aided and abetted D. Daniels to engage in the conduct complained of and, as a direct result, Lamar has and will continue to suffer, among other things, a significant loss of income and benefits, emotional injuries, as well as other losses associated with the effects of Defendants' conduct upon Lamar's employment, career, and life's normal pursuits.

63.    As a direct and proximate result of Daniels' conduct complained of herein, Lamar has suffered damages, injuries and losses, both actual and prospective, which include financial loss, damage to his career and emotional pain and suffering, so that Lamar seeks in this Fifth Cause of Action compensatory damages in the amount of Two Million Dollars ($2,000,000).

11

64. Here, Daniels' conduct towards Lamar shows that he acted with willful or wanton negligence, or recklessness, or a conscious disregard of Lamar's rights under the New York State Human Rights Law, or that his unlawful actions against Lamar were so reckless as to amount to a disregard of Lamar's rights, so that in addition to all the damages inflicted upon Lamar and in addition to all the measure of relief to which Lamar may properly be entitled herein, Daniels should additionally be required to pay punitive damages as punishment for his discriminatory conduct in the further amount of Three Million ($3,000,000) Dollars, in order to deter Daniels and others similarly situated from engaging in such conduct in the future.

65. Lamar, therefore, seeks compensatory damages on this Fifth Cause of Action, including, among other things, the emotional harm inflicted upon him in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff James Lamar demands judgment against Defendants D. Daniels Contracting Ltd. and/or David E. Daniels on the First Cause of Action in an award of compensatory and punitive damages to be determined at a trial of this matter; on the Second Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and Three Million Dollars ($3,000,000) in punitive damages, for a total of Five Million Dollars ($5,000,000); and on the Third Cause of Action in an award of compensatory and punitive damages to be determined at a trial of this matter; on the Fourth Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and Three Million Dollars ($3,000,000) in punitive damages, for a total

of Five Million Dollars ($5,000,000); on the Fifth Cause of Action, in the alternative, in the sum of Two Million Dollars ($2,000,000) in compensatory damages and Three Million Dollars ($3,000,000) in punitive damages, for a total of Five Million Dollars ($5,000,000); plus, on all Causes of Action, pre-judgment interest, the costs of this action and reasonable attorney's fees as is permitted under the law; and for such other and further relief as this Court deem just and proper.

**SCHWARTZ PERRY & HELLER LLP**
*Attorneys for Plaintiff*

By:_____
BRIAN HELLER
DAVIDA S. PERRY
3 Park Avenue, Suite 2700
New York, NY 10016
(212) 889-6565

13